UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JEANNE LACHANCE,

    Plaintiff,

v.

PERFORMANCE FOOD GROUP, INC., and

AETNA LIFE INSURANCE COMPANY,

    Defendants.

Case No. 2020-_____

# COMPLAINT

Plaintiff, Jeanne Lachance, through her undersigned attorneys, Ronald Ducharme and Colin Reilly, brings this action against the Defendants, Aetna Life Insurance Company and Performance Food Group, Inc., and states as follows:

## INTRODUCTION

1. Plaintiff, Jeanne Lachance, brings this action against the Defendants, Aetna Life Insurance Company ("Aetna") and Performance Food Group, Inc. ("PFG") (collectively referred to as "Defendants") for violation of the Employment Retirement Income and Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.*, ("ERISA"). Ms. Lachance is a participant in an ERISA welfare benefit plan that is underwritten and administered by Aetna. The name of the ERISA welfare benefit plan is Performance Food Group Long-Term Disability Group Policy ("The Plan"). The Group Policy Number is 0809843.

2. This Complaint seeks to secure disability benefits wrongfully withheld from the Plaintiff by the Defendants and to recover costs and attorneys' fees as provided by ERISA.

## PARTIES

3. Plaintiff, Jeanne Lachance, is an individual residing in Belgrade, Maine. Ms. Lachance is a vested participant in an Aetna employee benefit plan, within the meaning of 29 U.S.C. § 1002(2)(7). Ms. Lachance has standing to bring this action under 29 U.S.C. § 1132(a).

4. Defendant, Performance Food Group, Inc., is a Colorado corporation authorized to do business in the state of Maine. At all relevant times to the claims asserted in this Complaint, Performance Food Group was an ERISA claims fiduciary with respect to Participants of the Plan, generally, and specifically, with respect to Ms. Lachance, within the meaning of ERISA.

5. Defendant, Aetna Life Insurance Company, is a Connecticut corporation engaged in the business of insurance in the state of Maine and was the Claims Administrator for the Performance Food Group Long-Term Disability Group Policy. At all relevant times to the claims asserted in this Complaint, Aetna was an ERISA claims fiduciary with respect to participants of the Plan, generally, and specifically, with respect to Ms. Lachance, within the meaning of ERISA. Upon information and belief, Aetna is the party responsible for rendering a final determination on benefit claims under the Plan.

## JURISDICTION

6. This Court has jurisdiction over the subject matter and the parties to this proceeding pursuant to 29 U.S.C. § 1132(e)(2) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this District.

7. Venue is proper pursuant to 29 U.S.C. § 1132(e)(2), because the breach of the Plan in question was and is now being committed within the jurisdiction of the United States District Court for the District of Maine.

8. Plaintiff has exhausted all administrative remedies provided under the Plan.

## FACTUAL BACKGROUND

### *The Plan*

9. Ms. Lachance was an employee of Performance Food Group, Inc.

10. As an employee of Performance Food Group, Inc., Ms. Lachance was entitled to LTD benefits, under a contract of insurance between Performance Food Group and Aetna.

11. Aetna administers the plan under which Ms. Lachance is suing.

12. Upon information and belief, Aetna insures the Plan under which Ms. Lachance is suing.

13. Performance Food Group is the plan administrator of the Plan under which Ms. Lachance is suing.

14. Under the Plan, a participant is eligible for long term disability benefits "on the first day that [the participant is] disabled as a direct result of a significant change in [the participant's] physical or mental conditions and [the participant meets] all of the following requirements:

   a. [the participant] is covered by the plan at the time [the participant] becomes disabled; and

   b. [the participant] must be under the regular care of a physician. [the participant] will be considered under the care of a physician up to 31 days before [the

      participant] has been seen and treated in person by a physician for the illness, injury, or pregnancy-related condition that caused the disability; and

    c. [the participant] must be disabled by the illness, injury, or disabling pregnancy-related condition as determined by Aetna (see *Test of Disability*)."

15. The Plan defines the Test of Disability as "From the date that [the participant] first became disabled and until monthly benefits are payable for 24 months [the participant] meets the test of disability on any day that:

    a. [The participant] cannot perform the material duties of your own occupation solely because of an illness, injury, or disabling pregnancy-related condition; and

    b. [the participant's] earnings are 80% or less of [the participant's] adjusted predisability earnings."

16. Under the Plan material duties is defined as "duties that:

    a. Are normally needed for the performance of [the participant's] own occupation; and

    b. Cannot be reasonably left out or changed. However, to be at work more than 40 hours per week is not a material duty."

17. Under the Plan, own occupation is defined as "The occupation that [the participant is] routinely performing when [the participant's] period of disability begins. [The Participant's] occupation will be viewed as it is normally performed in the national economy instead of how it is performed: for your specific employer; or at [the participant's] location or work site; and without regard to [the participant's] specific reporting relationship."

18. Under the Plan, Ms. Lachance is entitled to receive 50% of her monthly pre-disability earnings until her Normal Retirement Age, 66 years and 10 months, or until she is no longer disabled; and in addition, she is entitled to Life Insurance Waiver of Premium Benefits.

***Background regarding Ms. Lachance's Illness and Occupation***

19. Ms. Lachance became disabled while she was working as a HR Generalist at Performance Food Group, Inc.

20. According to the job description of PFG, Ms. Lachance's occupation required her to "assist the site management team in staffing and development of qualified personnel and other Human Resources (HR) functions while ensuring compliance with government regulations and corporate policy. Functions as a team member within the department and organization, as required, and perform any duty assigned to best serve the company." This is skilled, complex work with an SVP (Specific Vocational Preparation) of 7 in the Dictionary of Occupational Titles (DOT).

21. On September 25, 2018, Ms. Lachance was psychiatrically hospitalized for worsening symptoms of anxiety/depression with suicidal ideation.

22. On October 2, 2018, Ms. Lachance was discharged from the psychiatric hospitalization with diagnoses of persistent depressive disorder with anxious overlay/features, unspecified anxiety disorder, and excoriation disorder with trichotillomania. At discharge, Ms. Lachance was prescribed Fluoxetine, Hydroxyzine, Prazosin and Trazodone for her psychiatric conditions.

23. Subsequent to her discharge, Ms. Lachance engaged in group and individual psychotherapy with Richard Thomas, Psy.D. for her mental health disabilities. Ms. Lachance completed an Intensive Outpatient Program with Dr. Thomas.

24. Subsequent to her discharge, Ms. Lachance continued to treat with and receive psychiatric medications from Dianne Raymond, PMHNP-BC, a psychiatric nurse practitioner. Nurse Raymond changed the medication regimen and on March 3, 2019, Ms. Lachance was prescribed Cymbalta, Prazosin, Hydroxyzine and Trazodone.

25. On March 28, 2019, Ms. Lachance filed an application with the Social Security Administration (SSA) for social security disability (SSDI) for the following illnesses: depression, PTSD, OCD, anxiety, suicidal thoughts and knee, ankle and foot pain.

26. A Disability Determination Explanation (DDE) was issued by Disability Determination Services (DDS). Contained within the DDE was a review dated May 29, 2019, performed by a psychologist, Brian Stahl, Ph.D., who assessed Ms. Lachance's psychological impairments on behalf of DDS. Dr. Stahl opined that Ms. Lachance has severe mental health impairments consisting of depression and PTSD. He found that she had moderate mental limitations with respect to the domains of understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage one's self. She had marked limitations with respect to carrying out detailed instruction and interacting appropriately with the general public. He concluded she was not able to handle the stress of complex work and had a history of complex work. Her mental residual functional capacity limited her to simple, non-public work with an SVP of 1 or 2 and her work as an HR Generalist was SVP 7.

27. Ms. Lachance engaged in psychotherapy with Dr. Thomas after July 5, 2019. Dr. Thomas authored a letter dated August 28, 2019 in which he opined that Ms. Lachance would

not be able to engage in either part time or full time work due to her psychological impairment. On October 16, 2019, Dr. Thomas completed a Psychiatric Review Technique as well as a Medical Assessment of Ability to do Work-Related Activities (Mental) to support that Ms. Lachance would not be able from a psychological perspective to engage in complex, stressful work activities. On October 23, 2019, Richard Thomas, Psy.D., Ms. Lachance's treating psychologist, examined Ms. Lachance and his impressions were unspecified anxiety disorder, compulsive skin picking, persistent depressive disorder with anxious distress (moderate), alcohol use disorder (moderate, dependence), and trichotillomania.

28.     On November 6, 2019, a SSA reviewing psychologist, Mary Alyce Burkhart, Ph.D., assessed Ms. Lachance's mental impairments for DDS at Reconsideration. Dr. Burkhart opined that the medical evidence of record submitted to DDS treating sources supported depression and PTSD and were severe impairments resulting in moderate mental limitations with regard four domains of understand, remember or apply information; interactive with others; concentrate, persist, or maintain pace; and adapt or manage one's self.  Dr. Burkhart opined that Ms. Lachance was markedly limited in her ability to carry out detailed instructions and markedly limited with regard to interacting appropriately with the general public and had numerous other moderate limitations.  Dr. Burkhart opined "[s]he was able to work in 2 hour blocks performing simple tasks over the course of a normal workday/workweek."  The DDE states that Dr. Burkhart concluded that Ms. Lachance was unable to handle the stress of complex work and could only understand and remember simple instructions and tasks. Dr. Burkhart, like Dr. Stahl, found that the mental RFC limited Ms. Lachance to simple, non-public work and that she could not perform her past relevant work as an HR Generalist/Recruiter with an SVP of 7.[1]

---

[1] The Notice of Reconsideration denying the SSDI claim and finding that Ms. Lachance could not perform her past relevant work, but could perform other work, was also submitted to Aetna.  Subsequent to the final denial of

29. On November 27, 2019, Dr. Richard Thomas noted that Ms. Lachance had been socially isolating since October 10, 2018, and complained of low energy/fatigue with severe depressed mood, and self-reported impaired concentration/memory. Dr. Thomas also noted that Ms. Lachance continued to suffer from PTSD. Dr. Thomas found that Ms. Lachance struggled with multi-tasking, difficulty with organization, and fear that impeded her ability to deal with unfamiliar people; with panic and anxiety that would impair her ability to work in her private chosen profession. Dr. Thomas finally added that Ms. Lachance had made slow progress in learning to manage her anxiety-related symptoms and was slow in developing her ability to be assertive and set limits needed to work effectively in a human relations position.

30. On November 29, 2019, Dianne Raymond, PMHNP-BC, stated in a letter to Aetna that Ms. Lachance "does not have the capacity currently to do her regular job which is a skilled position." Nurse Raymond reported that Ms. Lachance was receiving medication treatment for PTSD and recurrent Major Depressive Disorder. Ms. Lachance suffered from episodes of high anxiety when leaving her house and would become overwhelmed, scattered in thinking, and reactive when confronting stressors. As a result, Nurse Raymond expressed her concern about Ms. Lachance's ability to return to expected-on-going stressors in her prior workplace.

### *Ms. Lachance's LTD Claim*

31. Ms. Lachance presented a timely claim to Aetna.

32. PFG approved Ms. Lachance for short term disability benefits for six months.

33. Effective March 25, 2019, Aetna approved Ms. Lachance's claim for LTD benefits.

---

the appeal by Aetna on January 27, 2020, Administrative Law Judge Todd Holbrook of the Social Security Administration authored a Fully Favorable Decision dated April 16, 2020 awarding SSDI benefits to Ms. Lachance.

34. On July 5, 2019, Ms. Lachance's LTD benefits were terminated because Aetna determined that her disability was not supported.

35. On July 11, 2019, Ms. Lachance appealed Aetna's termination of her claim for LTD benefits. On July 19, 2019, Aetna received a letter signed by Amy Madden, M.D. (her primary care provider) and Diane Raymond, PMHNP-BC stating that Ms. Lachance could not return to a work environment at this time based on the diagnosis of Major Depressive Disorder with Psychosis and PTSD. Aetna stated the appeal review process began on July 19, 2019 and a decision on the appeal would be made no later than September 2, 2019.

36. Aetna referred the matter to John Pelletier, ScD. for a physician review. Dr. Pelletier issued a Physician Review dated August 9, 2019. Aetna did not provide Dr. Pelletier with a copy of the opinions of the Social Security reviewing psychologist, Dr. Stahl. Dr. Pelletier noted that she was a 60 year old female who was an HR Generalist. Diagnoses were Major Depressive Disorder, PTSD and Alcohol Dependence. At the time of the physician review by Dr. Pelletier, Ms. Lachance was in pharmacotherapy with Dianne Raymond, PMHNP-BC; a DBT group led by Jill Godfrey, LCSW and Diane Weinstein, LCSW; and individual psychotherapy with Laurie Rodrigues, LCSW. Dr. Pelletier opined that the diagnoses of Major Depressive Disorder, Recurrent, with Anxiety Distress and PTSD may have been well substantiated historically, but none of the recent records fully review symptoms that adequately substantiate the specific diagnoses apart from Depressive and Anxiety-Related symptoms reported by the insured. Dr. Pelletier concluded that clinical evidence available did not support functional impairment due to the insured's psychological conditions from July 5, 2019 forward.

37. A second Physician Review was completed by Dr. Pelletier on September 26, 2019. The records reviewed included August 21, 2019 report or Amy Madden, M.D. with a

PHQ-9 score of 17 reflecting moderately severe depression and active medications including Prazosin, Cymbalta, Naltrexone, Trazodone and Hydroxyzine for Major Depressive Disorder and PTSD together with the August 28, 2019 progress note of psychotherapist Richard Thomas, Psy.D. in which Dr. Thomas recommended that Ms. Lachance remain off from performing functional activities for 6-12 months due to depression and PTSD. Dr. Pelletier concluded that the additional records did not support functional impairment due to psychological conditions from July 5, 2019 forward. Clinical records available, according to Dr. Pelletier, provided evidence of multiple psychiatric conditions, but did not provide evidence of persistent demonstrable impairment. He concluded that she had the capacity to sustain functional activities for 40 hours a week.

38. On October 22, 2019, the May 31, 2019 Disability Determination Explanation of DDS containing the opinions and conclusions of reviewing psychologist, Brain Stahl, Ph.D., was filed with Aetna as part of the appeal.

39. On October 22, 2019, the Psychiatric Review Technique and Medical Assessment of Ability to do Work Related Activity (Mental) forms completed by Richard Thomas, Psy.D. were submitted in support of the appeal by Ms. Lachance.

40. A third Physician Review was performed by Dr. Pelletier. The Disability Determination Explanation of Dr. Stahl is listed in the records submitted for review, but the report of Dr. Pelletier does not expressly state that he reviewed Dr. Stahl's opinions. In his report of November 8, 2019, Dr. Pelletier again concluded that the evidence available did not support functional impairment.

41. On December 2, 2019, Ms. Lachance submitted additional documents in support of her appeal, including a medical letter from Dr. Thomas dated November 27, 2019 and a letter from Nurse Raymond both supporting functional impairment of Ms. Lachance.

42. Dr. Pelletier reviewed the statement of Dr. Thomas dated November 27, 2019, and issued a report dated December 30, 2019 in which he continued to opine that the claimant was not functionally impaired during the dates under review. On January 2, 2020, Aetna issued a letter stating that Aetna needed more time for the appeal review and Aetna could not make a decision on the appeal as of that date. Aetna gave Ms. Lachance until January 22, 2020 to submit additional information.

43. On January 16, 2020, Ms. Lachance submitted additional medical records of Dr. Thomas, Dr. Madden, Nurse Raymond and Social Worker, Jill Godfrey. The reports of Dianne Raymond, Jill Godfrey and Dr. Thomas from December 2019 were all within 6 months of July 5, 2019 when the LTD benefits were discontinued, but were not submitted to Dr. Pelletier for review and consideration. On January 17, 2020, the claimant submitted an additional report of Dr. Thomas, the Social Security Administration Disability Determination Explanation dated December 18, 2019 containing the opinions of psychologist, Dr. Burkhart; as well as the PFG job description and DOT job description for HR Generalist.

44. Finally, on January 21, 2020, the office note and letter of Dr. Thomas were submitted to Aetna.

45. On January 27, 2020, Aetna upheld its decision to terminate Ms. Lachance's LTD benefits, without reviewing the two Social Security psychologist's reports and rejecting Dr. Thomas's, Dr. Madden's, and Nurse Raymond's psychological and psychiatric opinions that Ms. Lachance was unable to perform her own occupation. Moreover, additional documents and

information admitted to Aetna by Ms. Lachance from December 2019 and January 2020 were not forwarded for further peer review by Dr. Pelletier, and this would include the Disability Determination Explanation of DDS containing the opinions of Psychologist Burkhart.

46. On February 7, 2020, Ms. Lachance requested the documents and information from December 2019 and January 2020 be contained in the administrative record even though they were not submitted to a peer reviewer. Aetna issued a letter dated February 13, 2020 stating that the records were reviewed prior to the January 27, 2020 determination, but were not sent to the peer reviewer because the dates of service were more than 6 months past the date benefits were terminated on July 5, 2019. However, the submission on January 17, 2020 by Ms. Lachance contains the Disability Determination Explanation of December 18, 2019, which was within six months of July 5, 2019.

47. There is no proof in the record, that Aetna's reviewing psychologist reviewed either of the psychological reviews by Dr. Burkhart and Dr. Stahl that were conducted by Social Security, nor did Dr. Pelletier review all the treating provider reports submitted in the administrative record.

48. Aetna did not request that Ms. Lachance attend or schedule Ms. Lachance for a psychological examination with Dr. Pelletier or any other physician, psychologist, or psychiatrist.

49. The Social Security psychologist's reports and all reports of treating providers should have been reviewed by Aetna's reviewing psychologist in determining whether Ms. Lachance should continue to receive benefits.

## **CLAIMS FOR RELIEF**

### COUNT I:
### ENFORCEMENT OF TERMS OF PLAN ACTION FOR UNPAID BENEFITS

50. Plaintiff repeats and realleges all the allegations set forth in the paragraphs above as if fully set forth herein.

51. The Plan is a contract.

52. Ms. Lachance has performed all of her obligations under the contract.

53. Pursuant to 29 U.S.C. § 1132(a), a civil action may be brought by a participant to recover benefits due to her under the terms of her plan, to enforce her rights under the terms of the plan, or clarify her rights to future benefits under the terms of the plan.

54. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

55. In accordance with 29 U.S.C. § 1132, Ms. Lachance is entitled to be paid benefits under the Plan based upon her disabled status from and after July 5, 2019 to the present, and continuing.

56. The Defendants have refused to provide Ms. Lachance with these disability benefits and are, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

57. As a direct and proximate result of this breach, Ms. Lachance has lost the principal and the use of her rightful LTD benefits.

### COUNT II:
### ATTORNEY'S FEES AND COSTS

58. Plaintiff repeats and realleges all the allegations set forth in the paragraphs above as if fully set forth herein.

59. Under the standards applicable to ERISA, Ms. Lachance deserves to recover "reasonable attorney's fee and costs of the action herein pursuant to section 502(g)(1) of ERISA, 20 U.S.C. § 1132(g).

60. The Defendants have the ability to satisfy the award.

61. Ms. Lachance's conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all participants.

62. The Defendants have acted in bad faith in denying Ms. Lachance's benefits under the Plan.

63. The award of attorney's fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter Judgment against the Defendants on both Counts of this Complaint, and:

(1) Declare, adjudge and decree that Ms. Lachance is entitled to LTD benefits as calculated under the terms of the Plan

(2) Award Ms. Lachance the full amount of unpaid benefits under the Plan to which she is entitled, together with such pre-judgment interest as may be allowed by law.

(3) Order that the Defendants make restitution to Ms. Lachance in the amount of any losses sustained by Ms. Lachance in consequence of the wrongful conduct alleged herein, together with prejudgment interest.

(4) Award Ms. Lachance the costs of this action and reasonable attorneys' fees; and

(5) Award such other relief as the Court deems just and reasonable.

Dated: October 14, 2020                                  Respectfully Submitted,

                                                        */s/ Colin B. Reilly*
                                                        Colin B. Reilly, Bar No. 6204
                                                        **BOURQUE CLEGG**
                                                        **CAUSEY & MORIN LLC**
                                                        949 Main Street
                                                        P.O. Box 1068
                                                        Sanford, Maine 04073
                                                        Telephone: (207) 324-4422
                                                        Facsimile: (207) 324-9556
                                                        *creilly@bourqueclegg.com*


                                                        */s/ Ronald A. Ducharme*
                                                        Ronald A. Ducharme, Bar No. 003197
                                                        **Law Offices of Ronald A. Ducharme, LLC**
                                                        27 Temple Street
                                                        Waterville, ME 04901
                                                        Telephone: (207) 873-7771
                                                        Facsimile: (207) 877-9454
                                                        *ron@ducharmelegal.com*